UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| YAHOO! INC., | Case No.: 11-CV-03282-LHK |
| Petitioner, | ORDER DENYING PETITION TO COMPEL RESPONDENT BRYAN IVERSEN'S INDIVIDUAL CLAIMS TO ARBITRATION |
| v. | |
| BRYAN IVERSEN, | |
| Respondent. | |

Petitioner Yahoo! Inc. ("Yahoo") petitions the Court pursuant to 9 U.S.C. § 4 of the Federal Arbitration Act ("FAA") seeking to compel individual rather than class arbitration of Respondent Bryan Iversen's ("Iversen") employment-related claims. Pursuant to Civil Local Rule 7-1(b), the Court finds this matter appropriate for resolution without oral argument and hereby VACATES the hearing and case management conference scheduled for October 13, 2011. Having considered the submissions of the parties, and for good cause shown, the Court hereby DENIES the petition.

**I.    BACKGROUND**

This action arises from an employment dispute. Upon commencing employment with Yahoo, Iversen signed an arbitration agreement on September 17, 2007, in which he agreed as follows:

> I acknowledge and confirm the mutual agreement that Yahoo! Inc. ("Yahoo!") and I will resolve any employment-related disputes or controversies against Yahoo!, its affiliates, or any officer, director, employee, or agent of Yahoo! or its affiliates, including but not limited to claims related to harassment, discrimination, wrongful

1

termination, retaliation, defamation, and compensation (including equity compensation), by binding arbitration under the then current American Arbitration Association ("AAA") National Rules for the Resolution of Employment Disputes ("Rules") and as provided by the Federal Arbitration Act.

Frick Decl. ¶ 6, ECF No. 5; Ex. to Frick Decl. at 2.

On June 23, 2011, Iversen filed a demand for arbitration with the AAA asserting claims on behalf of a class under the Private Attorneys General Act, Cal. Lab. Code § 2698 *et seq.*, alleging: (1) unpaid overtime; (2) failure to provide itemized wage statements; (3) failure to provide compensation upon termination; (4) unfair business practices under California Business & Professions Code § 17200 *et seq.*; (5) break violations; (6) failure to keep records; (7) illegal deductions; and (8) minimum wage violations. *See* Ensign Decl. Ex. B, ECF No. 4-2.  Yahoo asserts that the arbitration agreement does not permit arbitration of class claims and therefore brings this petition seeking to compel Iversen to arbitrate his claims individually.  Iversen contends that the arbitration agreement allows class arbitration and furthermore requires that any questions of arbitrability be determined by the arbitrator, not the Court.

## II. LEGAL STANDARD

The FAA applies to any contract affecting interstate commerce, including employment agreements. *See Circuit City Stores, Inc. v. Adams*, 532 U.S. 105, 119 (2001).  Enacted for the purpose of making valid and enforceable written agreements to arbitrate disputes, the FAA embodies "the basic precept that arbitration 'is a matter of consent, not coercion.'" *Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*, 130 S. Ct. 1758, 1773 (2010) (quoting *Volt Info. Sciences, Inc. v. Bd. of Trustees of Leland Stanford Junior Univ.*, 489 U.S. 468, 479 (1989)).  In accordance with this principle, the Supreme Court has held that parties may agree to limit the issues subject to arbitration, *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 628 (1985); to arbitrate according to specific rules, *Volt*, 489 U.S. at 479; and to limit with whom a party will arbitrate its disputes, *Stolt-Nielsen*, 130 S. Ct. at 1773.  Section 4 of the FAA ensures that "'private agreements to arbitrate are enforced according to their terms,'" *Stolt-Nielsen*, 130 S. Ct. at 1773 (quoting *Volt*, 489 U.S. at 479), by expressly authorizing a party to an arbitration agreement to

petition a United States district court for an order directing that "arbitration proceed in the manner provided for in such agreement," 9 U.S.C. § 4.

Under the FAA, arbitration agreements "shall be valid, irrevocable, and enforceable save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. Arbitration is a matter of contract, and the FAA places arbitration agreements "on an equal footing with other contracts." *Rent-A-Center, West, Inc. v. Jackson*, 130 S. Ct. 2772, 2776 (2010). The interpretation of an arbitration agreement is therefore generally a matter of state law, *Arthur Andersen LLP v. Carlisle*, 129 S. Ct. 1896, 1901-02 (2009), unless application of state-law rules would "stand as an obstacle to the accomplishment of the FAA's objectives," *AT&T Mobility LLC v. Concepcion*, 131 S. Ct. 1740, 1748 (2011).

**III. ANALYSIS**

Neither party disputes that there is a valid and enforceable arbitration agreement or that Iversen's claims, were he pursuing them solely on his own behalf, fall within the scope of the agreement. Rather, the questions before the Court are the same ones that confronted the Supreme Court in *Green Tree Financial Corporation v. Bazzle*, 539 U.S. 444 (2003) (plurality): (1) whether the arbitrability of class claims under the parties' contract should be determined by the court or the arbitrator, and (2) what standard the appropriate decision maker should apply in determining whether the contract allows class arbitration. *See Stolt-Nielsen*, 130 S. Ct. at 1771 (discussing *Bazzle*). The Court discusses each in turn.

    **A. Whether the Arbitrator or the Court Should Decide the Arbitrability of Class Claims**

Believing this case to be squarely controlled by *Stolt-Nielsen*, Yahoo insists there is no open matter of contract interpretation and that referral to an arbitrator to decide the arbitrability of class claims would therefore be both unnecessary and improper. Contrary to Yahoo's belief, *Stolt-Nielsen* provides little, if any, guidance to the dispute at hand. *Stolt-Nielsen* held that "a party may not be compelled under the FAA to submit to class arbitration unless there is a contractual basis for concluding that the party *agreed* to do so." 130 S. Ct. at 1775 (emphasis in original). The

3

1  Supreme Court took pains to underscore that the parties in *Stolt-Nielsen* "selected a panel or
2  arbitrators and stipulated that the arbitration clause was 'silent' with respect to class arbitration."
3  *Id.* at 1766; *accord id.* at 1775 (noting that "the parties concurred that they had reached 'no
4  agreement' on [the arbitrability of class-wide claims]"); *id.* at 1776 (again noting parties'
5  stipulation); *id.* at 1776 n.10 (same). Because the parties in *Stolt-Nielsen* stipulated that they had
6  reached no agreement on the arbitrability of class-wide claims, the Supreme Court had "no
7  occasion to decide what contractual basis may support a finding that the parties agreed to authorize
8  class-action arbitration," *id.* at 1776 n.10, nor to decide the threshold question of whether the court
9  or the arbitrator should decide arbitrability.

10  Had Yahoo and Iversen stipulated that there was no agreement on the issue of class
11  arbitration, as did the parties in *Stolt-Nielsen*, then *Stolt-Nielsen* would indisputably control. *See*
12  *id.* at 1776. The parties, however, have made no such stipulation. Indeed, whether the arbitration
13  agreement between Yahoo and Iversen is "silent" on the availability of class arbitration is precisely
14  what lies at the heart of this dispute.

15  Iversen contends that the arbitration agreement is not "silent" but rather permits class
16  arbitration by providing that arbitration will be conducted "under the then current American
17  Arbitration Association [(AAA)] National Rules for the Resolution of Employment Disputes,"
18  which as of October 8, 2003 includes the AAA Supplementary Rules for Class Arbitration ("AAA
19  Supplementary Rules"). *See* Opp'n Br., Ex. A at 1. The AAA Supplementary Rules state that they
20  "shall apply to any dispute arising out of an agreement that provides for arbitration pursuant to any
21  of the rules of the American Arbitration Association ('AAA') where a party submits a dispute to
22  arbitration on behalf of or against a class or purported class, and shall supplement any other
23  applicable AAA rules." *Id.* The current dispute clearly arises out of an agreement that provides for
24  arbitration pursuant to AAA rules, and Iversen has submitted a dispute to arbitration on behalf of a
25  class. As such, Iversen argues that the terms of the contract clearly incorporate the AAA
26  Supplementary Rules, reflecting the parties' intent to authorize class-wide arbitration of claims.

Yahoo disagrees with Iversen's interpretation of the contract, asserting that the arbitration agreement is "silent" regarding class arbitration because it "makes no reference to class arbitration." Br. at 2. Although Yahoo believes the agreement's lack of reference to class arbitration is dispositive under *Stolt-Nielsen*, the Supreme Court explained that it used the term "'silent' in the sense that [the parties] had not reached any agreement on the issue of class arbitration," *Stolt-Nielsen*, 130 S. Ct. at 1768, "not simply . . . that the clause made no express reference to class arbitration," *id.* at 1766. As another court in this district recently explained, "[t]he Supreme Court has never held that a class arbitration clause must explicitly mention that the parties agree to class arbitration in order for a decisionmaker to conclude that the parties *consented* to class arbitration. . . . [T]he failure to mention class arbitration in the arbitration clause itself does not necessarily equate with the 'silence' discussed in *Stolt-Nielsen*." *Vazquez v. ServiceMaster Global Holding Inc.*, 2011 WL 2565574 at *3 n.1, No. 09-cv-05148-SI (N.D. Cal. June 29, 2011) (Illston, J.) (quoting *Stolt-Nielsen*, 130 S. Ct. at 1768) (emphasis added).

The Court therefore finds a genuine dispute between the parties as to whether their contract authorizes class-wide arbitration of Iversen's claims. Consequently, the Court must consider the threshold question the *Stolt-Nielsen* Court was able to bypass: whether the arbitrability of class claims should be determined by the court or the arbitrator.

As Judge Illston noted, "[n]either the Supreme Court nor the Ninth Circuit has explained definitively when the availability of class-wide arbitration might be a question for a court and when it might be a question for an arbitrator." *Vazquez*, 2011 WL 2565574 at *3. Although four justices in *Bazzle* opined that this question is a matter of arbitration procedure and therefore one for the arbitrator, *see* 539 U.S. at 452-53; *see also id.* at 455 (Stevens, J., concurring in judgment but agreeing only that the question is "[a]rguably" for the arbitrator), the Supreme Court clarified in *Stolt-Nielsen* that "*Bazzle* did not yield a majority decision" and that the question remains open, 130 S. Ct. at 1772 (declining to answer the question because the parties had already agreed to refer the matter to an arbitration panel).

In the absence of any controlling authority, the Court turns to more general law regarding what questions are for the Court and what questions are for the arbitrator. It is well established that parties may be compelled to arbitrate only those disputes they have agreed to arbitrate, including the issue of arbitrability itself. *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 943 (1995). It follows that, "[j]ust as the arbitrability of the merits of a dispute depends upon whether the parties agreed to arbitrate that dispute, so the question 'who has the primary power to decide arbitrability' turns upon what the parties agreed about *that* matter." *Id.* (internal citations omitted).

When Courts decide whether the parties agreed to arbitrate arbitrability, "Courts should not assume that the parties agreed to arbitrate arbitrability unless there is 'clear and unmistakable' evidence that they did so." *Id.* at 944; *accord Gilbert Street Developers, LLC v. La Quinta Homes, LLC*, 174 Cal. App. 4th 1185, 1190 (2009). Incorporation of the AAA rules by reference constitutes "clear and unmistakable" evidence that the parties intended to submit the question of arbitrability to the arbitrator, so long as what is being incorporated actually exists at the time of incorporation such that "the parties can know exactly what they are incorporating." *Gilbert Street Developers*, 174 Cal. App. 4th at 1194; *see also Rodriguez v. Am. Technologies, Inc.*, 136 Cal. App. 4th 1110 (2006); *Dream Theater, Inc. v. Dream Theater*, 124 Cal. App. 4th 547 (2004).

Here, Iversen and Yahoo's arbitration agreement, entered into in September 2007, incorporated by reference the AAA Rules, including the Supplementary Rules, effective October 8, 2003. The Supplementary Rules provide, in relevant part, that "[u]pon appointment, the arbitrator shall determine as a threshold matter, in a reasoned, partial final award on the construction of the arbitration clause, whether the applicable arbitration clause permits the arbitration to proceed on behalf of or against a class (the "Clause Construction Award")." Opp'n Br., Ex. A at 1. The Court agrees with Iversen that the incorporation by reference of the AAA Supplementary Rules as they existed at the time Yahoo and Iversen entered into their contract constitutes a "clear[] and unmistakab[le]" agreement to have the arbitrator decide questions regarding the arbitrability of class-wide claims. Accordingly, the Court DENIES Yahoo's petition to compel Iversen to arbitrate his claims individually.

### B. Whether Class Arbitration is Available

In light of the Court's holding that the arbitrability of Iversen's claims is a matter for the arbitrator to decide, it is unnecessary at this time to consider the merits of whether the arbitration agreement allows Iversen to pursue his claims on a class-wide basis. Nonetheless, it may prove useful at this time for the Court to address some of Yahoo's arguments on the subject, particularly because this matter may find its way back to the Court at a later date. *See* AAA Supplementary Rules, Opp'n Br., Ex. A at 2 (permitting the parties to "move a court of competent jurisdiction to confirm or to vacate the Clause Construction Award" issued by the arbitrator).

Yahoo appears to argue that it does not matter whether the Court or the arbitrator decides the issue of arbitrability because, under *Stolt-Nielsen* and *Concepcion*, class arbitration is prohibited "unless the arbitration agreement expressly allows for them," Reply Br. at 3, and here, the agreement contains no such express allowance. Once again, Yahoo misconstrues the cases on which it relies. As previously noted, the *Stolt-Nielsen* Court refrained from deciding "what contractual basis may support a finding that the parties agreed to authorize class-action arbitration." *Stolt-Nielsen*, 130 S. Ct. at 1776 n.10. The *Concepcion* Court later reiterated that *Stolt-Nielsen* held only that an arbitration panel exceeded its power under the FAA by imposing class procedures "based on policy judgments rather than the arbitration agreement itself *or some background principle of contract law that would affect its interpretation.*" *Concepcion*, 131 S. Ct. at 1750 (discussing *Stolt-Nielsen*) (emphasis added). In other words, *Stolt-Nielsen* did not disturb the longstanding principle that interpretation of an arbitration agreement is generally a matter of state law, *see Arthur Andersen*, 129 S. Ct. at 1901-02, and that state law generally permits a decisionmaker to "look beyond the four corners of the contract where appropriate," *Vazquez*, 2011 WL 2565574 at *3 n.1.

Nor does the Supreme Court's recent decision in *AT&T Mobility LLC v. Concepcion*, 131 S. Ct. 1740 (2011), support Yahoo's position that an express authorization of class arbitration is required in order to find that the parties consented to such a procedure. The arbitration agreement at issue in *Concepcion* contained an express *disclaimer* of class arbitration, requiring that all claims

be brought in the parties' "individual capacity, and not as a plaintiff or class member in any purported class or representative proceeding." *Concepcion*, 131 S. Ct. at 1744. AT&T sought to compel individual arbitration of plaintiff's class claims, but the district court and Ninth Circuit found the arbitration provision unconscionable under California law as announced in *Discover Bank v. Superior Court*, 36 Cal. 4th 148 (2005), and therefore unenforceable. *Id.* at 1745. The Supreme Court reversed, holding that "[r]equiring the availability of classwide arbitration" in the face of an express disclaimer against class arbitration "interferes" with the FAA's "principal purpose," which is to "'ensure that private arbitration agreements are enforced according to their terms.'" *Id.* at 1748 (quoting *Volt*, 489 U.S. at 478).

No such express disclaimer exists in Yahoo and Iversen's arbitration agreement. Thus, nothing in *Concepcion* forecloses a decisionmaker, whether it be the arbitrator or the subsequent reviewing court, from finding that the parties consented to submit class claims to arbitration even in the absence of any explicit discussion of class arbitration within the four corners of the agreement itself. *Cf. Underwood v. Palms Place, LLC*, 2011 WL 1790463, No. 2:09-cv-00700-RLH (D. Nev. May 10, 2011) (holding that arbitrator did not exceed his scope of authority because the AAA rules allow arbitrator to determine whether the agreements permit class proceedings); *Smith & Wollensky Rest. Group, Inc. v. Passow*, 2011 WL 148302, No. CIV.A. 10-11498-EFH (D. Mass. Jan. 18, 2011) (upholding an arbitrator's Clause Construction Award upon finding the arbitration agreement sufficiently broad to allow class claims under a reasonable interpretation). To the contrary, the backbone principle of both *Stolt-Nielsen* and *Concepcion* is that courts and arbitrators are to "'give effect to the contractual rights and expectations of the parties.'" *Stolt-Nielsen*, 130 S. Ct. at 1773-74 (quoting *Volt*, 489 U.S. at 479). To *refuse* arbitration of class claims where the parties to an agreement *intended* to allow such a procedure, as determined in accordance with general principles of contract interpretation, would fly equally in the face of the FAA's purpose.

**IV. CONCLUSION**

For the foregoing reasons, the Court DENIES the petition to compel Respondent to arbitrate his employment-related claims individually.

**IT IS SO ORDERED.**

Dated:  October 11, 2011

_Lucy H. Koh_
LUCY H. KOH
United States District Judge

United States District Court
For the Northern District of California

9
Case No.: 11-CV-03282-LHK
ORDER DENYING PETITION TO COMPEL RESPONDENT BRYAN IVERSEN'S INDIVIDUAL CLAIMS TO ARBITRATION